UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **WILLIAM CLAYTON RICE,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 4:20-cv-01414-RDP |
| **KILOLO KIJAKAZI, Acting Commissioner, Social Security Administration,** | } |
| **Defendant.** | } |

**MEMORANDUM OF DECISION**

Plaintiff William Clayton Rice brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner"), which denied his claims for disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed his applications for disability, DIB and SSI on March 29, 2018. (Tr. 168-87). His applications were denied initially and again denied upon review. (Tr. 1, 97-101). On September 28, 2018 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 133-134). Plaintiff's request was granted, and a hearing was held on September 20, 2019, before ALJ Brian Turner. (Tr. 40-69).  Appearing via video was Vocational Expert ("VE") Otis Pearson, who provided testimony. (Tr. 64).

In his decision dated October 25, 2019, the ALJ determined that Plaintiff had not met the requirements for disability within the meaning of sections 216(i) and 223(d) of the Act, and was not disabled under section 1614(a)(3)(A) of the Act. (Tr. 21-23). After the appeals council denied Plaintiff's request for review of the ALJ's decision, that decision became final and therefore a proper subject of this court's appellate review. (Tr. 24-34).

At the time of the hearing Plaintiff was fifty-three years old living with his daughter. (Tr. 14, 60). Plaintiff graduated high school and has past work experience as a poultry eviscerator, chicken deboner, poultry worker, and a lift operator. (Tr. 33, 44, 65). Plaintiff alleges he has been disabled beginning March 15, 2017. (Tr. 27). In his initial disability report Plaintiff claimed that he has been unable to work because of hip and back pain. (Tr. 218).

In an undated Function Report, Plaintiff reported that he walks to get food (as he does not have a car) and to and from church, washes clothes, and watches television. (Tr. 249). Plaintiff takes care of his daughter by getting her food as well. (Tr. 253). Before his illnesses started, Plaintiff reported that he was able to work at chicken plants and he now has some trouble sleeping at night. (*Id*.). Plaintiff indicated that despite his hip and back pain there are no limitations in his ability to perform personal care. (*Id*.). Plaintiff also reported that he does not need anyone to remind him to groom himself or take his medication. (Tr. 254). Plaintiff further acknowledged that he has no limitations regarding his ability to prepare frozen meals for himself and his daughter because it only takes him about three minutes. (*Id*.). Around the house, Plaintiff is able to clean and do laundry which takes him about two hours without encouragement. (*Id*.). Plaintiff goes outside walking alone every day and to the store shopping, which takes him about three hours. (Tr. 255). Plaintiff maintains that he is able to count change and handle a savings account. (*Id*.). Plaintiff's hobbies are limited to watching TV every day; he doesn't spend time with others and

does not need anyone to accompany him because "he's a man of god and them devils." (Tr. 256-67). Plaintiff claims that his illnesses have also affected his ability to stand, kneel, hear, complete tasks, understand, follow instructions, and use his hands. (Tr. 257). He maintains that his limitations are partially attributable to how he was in special education in school because he is "real slow." (*Id.*). Plaintiff further acknowledged that he is able to follow written instructions, despite not being able to read well, and he is able to follow spoken instructions "a little bit." (*Id.*). However, Plaintiff has also submitted his educational records which revealed that in 1976 he had an IQ of 70. (Tr. 233-40). Plaintiff began treatment for reported back pain on May 27, 2013. (Tr. 355-67). Diagnostic imaging of the lumbar spine showed chronic changes, but were otherwise unremarkable. (*Id.*).

On May 25, 2018, during a Consultative Physical Examination with Dr. Celtin Robertson, Plaintiff stated that he had been experiencing back pain since an on-the-job injury five years earlier. (Tr. 370). Plaintiff described his pain as constant at a level of four on a ten-point scale, and he claimed his pain was exacerbated by prolonged sitting, standing, and lying flat. (*Id.*). Dr. Robertson observed that Plaintiff's gait was normal and independent, that Plaintiff was obese, weighing 199 pounds at five foot seven inches, and that he appeared to be uncomfortable. (Tr. 372). Plaintiff was able to toe-heel walk and squat normally, with squatting producing some lower back pain. (*Id.*). Plaintiff displayed a full range of motion of the dorsolumbar spine with some pain on forward flexion; his strength, sensation, and reflexes remained normal. (*Id.*). Plaintiff's back was not tender, and his hands were normal to inspection with full grip strength, full range of motion, normal fine and gross manipulation. (Tr. 373). Further, Dr. Robertson (along with Dr. Higgins) concluded that despite Plaintiff's allegations of back pain, Plaintiff retains a full range of motion with full

strength, sensation, and deep tendon reflexes. (Tr. 370-74, 407-27). Further, Plaintiff's straight leg testing revealed he was negative for sciatica. (Tr. 373).

On June 18, 2018, Plaintiff walked five miles to a Consultative Psychological Evaluation performed by Dr. Kennon, who estimated that Plaintiff's intellectual functioning fell within the average range. (Tr. 377-80). Dr. Kennon also found that Plaintiff's fund of general knowledge was poor, but declined to offer any diagnosis of an intellectual or cognitive impairment. (*Id*.). She further observed that Plaintiff's immediate memory had a digit span of 5 digits forward and 2 digits backwards, and successfully recalled activities from the previous day. (*Id*.). Plaintiff was able to sufficiently spell "world" forwards and backwards. (*Id*.). Further, although Plaintiff reported that he would hear voices calling his name, Dr. Kennon concluded that his thought processes remained normal. (*Id*.). During his mental health examinations Plaintiff was reported to have been well appearing, cooperative with appropriate behavior, a normal demeanor, and displaying a fair mood and effect. (Tr. 377-80, 410).

On July 26, 2018, Plaintiff presented to Riverview Regional Medical Center with complaints of right groin pain due to a reducible hernia. (Tr. 396-97). The attending physician, Dr. Nordess, concluded that there was no hernia present at that time. (*Id.*). Dr. Nordess also noted that Plaintiff's body mass index measured 31.48, with no indication of any musculoskeletal or neurological abnormalities. (*Id*.). Later an x-ray of Plaintiff's lumbrosacral spine taken on August 24, 2018 was interpreted as showing mild to moderate lower facet and sacroiliac joint degenerative joint disease. (Tr. 381-82).

On April 22, 2019, Plaintiff again sought treatment at Riverview Regional Medical Center for a hernia claiming he was lifting bathtubs weighing about 70 pounds each. (Tr. 410-27). During the examination the attending physician observed that Plaintiff's back was nontender with normal

strength, sensation, and range of motion. (*Id*.). At that time Plaintiff's hernia was reducible on examination. Plaintiff underwent surgery the very next day and was discharged on April 24, 2019, in stable and improved condition. (*Id*.). At a primary care visit on August 19, 2019, there was no indication Plaintiff reported any ongoing symptoms. (Tr. 432-33). Although Plaintiff complained of chronic lumbago, the attending physician found there to be no abnormal findings and instructed Plaintiff to exercise as well as prescribing him a non-steroidal anti-inflammatory medication. (Tr. 432-33).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of this criteria, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.   If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff meets the insured status requirements of the Act through September 30, 2022 and has not engaged in substantial gainful activity since March 15, 2017, his alleged onset date of disability. (Tr. 26). Further, ALJ found that Plaintiff had the following severe impairments: anxiety, paranoid personality disorder, compulsive personality disorder, mild to moderate facet and sacroiliac joint degenerative joint disease, and obesity. (Tr. 27). The ALJ then found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

In his decision, the ALJ noted that Plaintiff's back impairment does not meet listing 1.04 because he retains full range of motion with full strength, sensation, and deep tendon reflexes. (Tr.

27). Also, Plaintiff did not meet the listing criteria because his straight leg testing was negative. (*Id.*). The ALJ also determined Plaintiff's alleged mental impairments do not meet the criteria of listings 12.06 and 12.08 because Plaintiff has only a moderate limitation in understanding, remembering, or applying information. The ALJ reasoned this was the case because Plaintiff stated that he does not require reminders to groom or take medications, he reported he can follow spoken instructions, and at the hearing he stated he reads "pretty well" and is average at writing. (Tr. 28). In addition, Plaintiff stated he can count change and handle a savings account. (*Id.*). This was bolstered by Dr. Kennon's consultative psychological examination findings where she concluded though Plaintiff's fund of general knowledge was poor, she declined to offer any other diagnosis of an intellectual or cognitive impairment. (*Id.*).

The ALJ further concluded that Plaintiff has moderate limitations interacting with others because Plaintiff indicated he gets along "pretty well" with authority figures, is capable of shopping in public, and during his mental status examinations he was described as cooperative with appropriate behavior and had a normal demeanor. (*Id.*). In addition, the ALJ determined Plaintiff had a moderate limitation for adapting or managing himself because Plaintiff reported that although he does not handle stress well, he is pretty good at handling changes in routine, his mental symptoms do not affect his ability to maintain personal care, and he is able to prepare simple meals and do light housework. (*Id.*). And, while Dr. Kennon reported Plaintiff stated he had heard voices calling his name, his thought processes remained normal, he displayed a fair mood, and he has otherwise been observed to have an appropriate mood and affect at his encounters. (*Id.*).

The ALJ later concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), and that Plaintiff can crouch and crawl, never climb ladders or scaffolds, can

frequently be exposed to high, exposed places or moving mechanical parts, extreme cold and vibration; and that Plaintiff can apply simple instructions and make simple work-related decisions, can tolerate occasional changes in a routine work setting, and can tolerate occasional interaction with coworkers, supervisors and the public. (Tr. 29). Plaintiff was 50 years old on his alleged disability onset date, which is defined as an individual closely approaching advanced age. (Tr. 33). Nevertheless, he is able to communicate in English and has a high school education, so the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills. (Tr. 33). And, though Plaintiff is unable to perform his past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*).

### III.   Plaintiff's Argument for Remand or Reversal

Plaintiff points to three bases for his argument that the ALJ's decision is not supported by substantial evidence. Plaintiff's first argument is that the ALJ incorrectly disregarded the opinions of the State agency psychiatric consultant, Dr. Robert Estock. (Doc. # 13 at 9). Plaintiff contends that the ALJ should have favorably considered Dr. Estock's opinion because in his decision the ALJ stated Dr. Estock's report was "persuasive." (Tr. 32). And, Plaintiff asserts that because the ALJ regarded Dr. Estock's report as persuasive, the ALJ should have limited Plaintiff to sedentary work. (*Id.*).

Plaintiff next argues that the record shows he can only perform sedentary work, and thus should be eligible for benefits pursuant to Grid 201.9 or 201.10. (Doc. # 13 at 10). The ALJ determined that he can perform light work and Plaintiff challenges that finding.

Plaintiff's last argument is that the ALJ's decision was not supported by substantial evidence because the testimony from the VE that the ALJ relied on for his RFC determination was not based on a correct or full statement of Plaintiff's limitations and impairments. (Doc. # 13 at 14). Therefore, Plaintiff contends that as the ALJ relied on VE testimony that was based upon an improper hypothetical, the ALJ's decision was not supported by substantial evidence. (Doc. # 13 at 16).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is

limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

After careful review, the court concludes that Plaintiff's arguments are without merit and the ALJ's decision is due to be affirmed.

### A.     The ALJ Properly Evaluated the Medical Source Opinions

Plaintiff argues that the ALJ erred in disregarding the opinion of State agency psychiatric consultant, Dr. Estock, and because of that error the ALJ should have limited Plaintiff to sedentary work. (Doc. # 13 at 9). Plaintiff asserts that the ALJ should have considered the medical opinion of Dr. Estock because in his decision the ALJ acknowledged that Dr. Estock's "medical findings" were "persuasive." (*Id*.). But, Plaintiff's argument ignores the ALJ's explanation that follows immediately thereafter. There, the ALJ elaborated further and stated that although Dr. Estock's medical findings in his report were persuasive, his "medical opinions are less persuasive."[1] (Tr. 32).

When Plaintiff applied for benefits on March 29, 2019, the ALJ correctly applied the new Social Security regulations that became effective on March 27, 2017 for evaluating medical evidence. The new regulations now specify five categories of evidence: (1) objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. *See* 20 C.F.R. § 404.1513(a) (2020). Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations. 20 C.F.R. § 404.1513(a)(2), (3) (2020); *see* 81 Fed.

---

[1] Plaintiff has established no legal basis for his argument that the ALJ must consider the medical opinion of Dr. Estock because the ALJ stated the findings in his report were persuasive.

Reg at 62,562. For claims by adults on or after March 27, 2017, the regulations contain a more focused definition or medical opinion. The regulations no longer use the term "treating source"; instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *See* 20 C.F.R. § 404.1520c (2020). The Commissioner chose not to retain the "treating source rule" in 1991. To be sure, healthcare delivery has changed in significant ways, and the agency's adjudicative experience has shown that the source of an opinion is no longer the most important factor for determining the persuasiveness of the opinion. (*Id*.). In evaluating claims filed on or after March 27, 2017, "the agency will not defer or give any specific weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520(c)(a) (2020).

Further, the regulations governing claims filed on or after March 27, 2017 no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, the requirement that adjudicators must "give good reasons" for the weight given a treating source opinion). 20 C.F.R. § 404.1520(c)(b) (2020). Now, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical findings(s) using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (which includes length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. § 404.1520(c)(a)-(c) (2020). An ALJ must explain how he considered the factors of supportability and consistency. The ALJ must also explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. (*Id*.). The ALJ may (though is not required to) explain how he considered the other remaining factors. 20 C.F.R. § 404.1520c(b)(3) (2020).

The court finds that the ALJ properly evaluated Plaintiff's relevant medical evidence. The ALJ specifically stated that he did not find the medical *opinions* of Dr. Estock to be persuasive. (Tr. 32). This was because Dr. Estock did not explain the basis for many of his observations regarding Plaintiff's mental residual functional capacity assessment, and because Dr. Estock did not explain his reasons why Plaintiff would likely miss a day or two of work each month. (*Id.*). The ALJ further opined that Dr. Estock included multiple recommendations that were not phrased in vocationally relevant terms, and that those recommendations did not relate to any vocational description in the Dictionary of Occupational Titles or its companion publications. The ALJ cited a specific example of this, explaining that Dr. Estock noted that Plaintiff would be able to accept casual contact with others and would benefit from causal supervision and supportive feedback. (*Id.*). The ALJ concluded by stating that Dr. Estock's opinions were vague and did not provide meaningful insight into Plaintiff's ability to perform basic mental job skills. (*Id.*). Because the ALJ found the medical opinions of Dr. Estock not to be persuasive, by not considering them the ALJ did not err.

### B. The ALJ's Determination That Plaintiff Can Perform Light Work is Supported by Substantial Evidence

Plaintiff next argues that the ALJ's determination finding he was not disabled because he retained the RFC to perform light work is not supported by substantial evidence and, since there was no "function-by-function inquiry" in assessing the RFC, the ALJ violated SSR-96-8a. (Doc. # 13 at 10). Furthermore, Plaintiff contends that because the ALJ's RFC determination is not supported by substantial evidence, Plaintiff should have been found to meet the requirements pursuant to Grid 201.09 or 201 and the ALJ should have found he is limited to sedentary work. (Doc # 13 at 14). This argument is not persuasive.

Here, the ALJ properly discussed the relevant medical evidence in accordance with SSR 96-8p and found Plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). (Tr. 29). SSR 83-10 also discusses the meaning of light work, including the amount of sitting, standing, and walking required. *See* SSR 83-10, 1983 WL 31251. Given the definition of light work in the regulations and SSR 83-10, and as there was substantial evidence discussed by the ALJ that supports his RFC determination, the ALJ was not required to further discuss Plaintiff's ability to perform each of the exertional demands of light work. *See Castel v. Astrue*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. 2007); *see also, e.g., Goodrow v. Colvin*, No. 2:13-cv-672-FTM-CM, 2014 WL 3955076, at *3-4 (M.D. Fla. Aug. 13, 2014) ("Provided the ALJ considers all of the evidence, he is not required to specifically and explicitly set forth his findings on a 'function-by-function basis' concerning a claimant's functional limitations and work-related abilities.").

A claimant's RFC is the most that he can still do despite his limitations and is assessed based on an evaluation of the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (a)(3), 416.920(e), 416.945(a)(1), (a)(3). The ALJ has the responsibility at the hearing level of assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). It follows logically that "the task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016). An ALJ does not assume the role of a doctor in assessing a claimant's RFC and an ALJ is not required to base his or her RFC finding on a doctor's opinion. *See Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (stating "[a] claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *see also Dodson v.*

13

*Colvin*, No. 2:12-CV-1944-AKK (N.D. Ala. June 2, 2014); *Langley v. Astrue*, 777 F. Supp. 2d 1250 (N.D. Ala. 2011). Here, Plaintiff's assertion that the ALJ needed to consider Dr. Estock's opinion when formulating his determination of Plaintiff's RFC in order for it to be considered supported by substantial evidence is without merit.

In addition, Plaintiff's assertion that he would be disabled under Grid Rule 201.09 or 201.10 also fails because substantial evidence supports the ALJ's determination that Plaintiff can perform light work with additional, non-exertional limitations. *See Phillips v. Barnhart*, 357 F.3d at 1232, 1242-44 (11th Cir. 2004) (stating that when a claimant's RFC and other vocational factors do not fit the criteria of a particular Grid rule, the generally preferred course of action is to obtain testimony from a Vocational Expert to help determine whether other work exists); *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

### C. The Vocational Expert's Testimony was Supported by Substantial Evidence

Finally, Plaintiff argues that the ALJ erred in relying on the testimony of the Vocational Expert because the ALJ's hypothetical did not include limitations related to Plaintiff's lower back pain, anxiety disorder, and/or his paranoid personality disorder. (Doc. # 13 at 14-16). The argument misses the mark.

Here, the ALJ specifically referenced Plaintiff's anxiety, paranoid personality disorder, and degenerative joint disease to be severe impairments, and the ALJ specifically factored those limitations into Plaintiff's RFC determination. (Tr. 27-32). *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (a)(3), 416.920(e), 416.945(a)(1), (a)(3); SSR 96-8p. Further, the ALJ need not accept responses to hypothetical questions that include limitations that were not supported by the record. *See* Crawford, 363 F.3d at 1161; *Wilson*, 284 F.3d at 1227; *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986). It was Plaintiff's burden to prove that he could not perform the

14

occupations identified by the VE in his response to the hypothetical, and Plaintiff failed to meet their burden. (Tr. 33-34). *See Doughty*, 245 F.3d at 1278 n.2. As noted above, because the ALJ did not find the record contained relevant/persuasive medical opinions, the ALJ was not required to incorporate them into the hypothetical questions presented to the VE. The ALJ did not err in relying on the testimony of the VE, and the decision regarding Plaintiff's RFC was supported by substantial evidence.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 6, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE